IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| AMANDA LYNN PRICE f/k/a AMANDA | * | |
| LYNN CRAWFORD, and WILLIAM | * | |
| FRANCES PRICE, JR., | * | |
|     Debtors | * | Case No.: 1-06-bk-01457MDF |
| | * | |
| CITIFINANCIAL AUTO CORP, | * | |
|  f/k/a TRANSOUTH FINANCIAL CORP., | * | |
|     Objectant | * | |
| | * | |
|     v. | * | |
| | * | |
| AMANDA LYNN PRICE f/k/a AMANDA | * | |
| LYNN CRAWFORD, and WILLIAM | * | |
| FRANCES PRICE, JR., | * | |
|     Respondents | * | |

## OPINION

Before me is the objection of CitiFinancial Auto Corp. ("CitiFinancial") to the chapter 13 plan[1] filed by Amanda and William Price ("Debtors"), which CitiFinancial alleges was filed in bad faith. The history of this objection bears a brief review. Debtors' petition listed CitiFinancial as a creditor secured by a 2004 Jeep Liberty. Their original plan called for the Jeep to be surrendered in full satisfaction of the secured claim. CitiFinancial objected to Debtors' plan, arguing that Debtors should not be able satisfy its claim by surrendering a vehicle that had been demolished in an accident only a few months before the petition was filed and that was uninsured on the date of the accident. On March 5, 2007, I granted summary judgment in favor of Debtors, finding that 11 U.S.C. §506(a) prohibited bifurcation of CitiFinancial's secured claim

---

[1]Debtors filed a second amended chapter 13 plan on January 10, 2008 to which the chapter 13 trustee has filed an objection. Because Debtors' proposed treatment of CitiFinancial's claim remained the same in the original and amended plans, the parties have agreed that my ruling on whether the original plan was filed in bad faith is binding on any subsequent amended plans.

and, therefore, 11 U.S.C. § 1325(a)(5)(C) authorized surrender of the collateral in full satisfaction of the debt. However, I granted CitiFinancial leave to address the issue of whether Debtors were proposing their plan in good faith as required by 11 U.S.C. § 1325(a)(3). CitiFinancial then filed the amended objection to confirmation that is now before the Court.[2]

### Discussion

A chapter 13 plan must meet the requirements of 11 U.S.C. § 1325(a) in order to be confirmed. Most relevant to the dispute between CitiFinancial and Debtors, the bankruptcy court must find that a plan "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). When a creditor alleges that a plan has not been proposed in good faith, the creditor bears the burden of producing evidence to support that allegation. *In re Fries*, 68 B.R. 676, 685 (Bank. E.D. Pa. 1986); *In re Navarro*, 83 B.R. 348, 355 (Bank. E.D. Pa. 1988); *In re Crompton*, 73 B.R. 800, 808 (Bank. E.D. Pa. 1987). Once a creditor has met this initial burden the ultimate burden of persuasion shifts to the debtor to establish that the plan has been filed in good faith. *In re Norwood*, 178 B.R. 683, 687 (Bankr.E.D.Pa.1995) *citing In re Hines,* 723 F.2d 333 (3d. Cir. 1983) (burden of proof under §1325(a) requires debtor to present evidence that statutory requirements have been met). A debtor must meet this burden of proof by a "preponderance of the evidence." *In re Weisser*, 190 B.R. 453, 454 (Bankr. M.D. Fla. 1995); *In re Ziegler*, 88 B.R. 67, 69 (Bankr. E.D. Pa. 1988).

---

[2]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A). This Opinion constitutes the findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, which is made applicable to contested matters under Fed. R. Bankr. P. 9014(c).

2

In an earlier opinion[3], I held that CitiFinancial's allegations regarding certain pre-petition conduct by Debtor William Price ("Mr. Price") was sufficient to withstand a motion to dismiss for failure to state a claim on which relief could be granted. CitiFinancial offered sufficient evidence to shift the burden to Mr. Price to demonstrate that Debtors' plan was filed in good faith. In support of its objection, CitiFinancial established that Mr. Price was driving under the influence of a controlled substance when CitiFinancial's collateral was demolished. CitiFinancial further established that Mr. Price cancelled the casualty insurance covering the vehicle sixteen days before the accident and that he drove the vehicle fully aware that it was not insured. CitiFinancial also established that Debtors filed their bankruptcy petition shortly after the accident occurred.

    a.    *Good faith in the filing of a chapter 13 plan*

CitiFinancial asserts that Debtors' plan should not be confirmed because it was not proposed in good faith. Although CitiFinancial cites Debtors' failure to fully disclose the events that led to the destruction of its collateral, its primary objection focuses on Debtors' prepetition conduct.

The Third Circuit has not addressed the parameters of good faith as required by § 1325(a)(3), but the Court has established a framework for analyzing good faith when considering a motion to dismiss under § 1307(c). *In re Lilley*, 91 F.3d 491 (3d Cir. 1996). In *Lilley*, the Court of Appeals determined that:

> [T]he good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. Factors relevant to the totality of the circumstances inquiry may include, among others, the following: the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's

---

[3]*In re Price*, 366 B.R. 389, 396-97 (Bankr. M.D. Pa. 2007).

3

treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Lilley*, 91 F.3d at 496 (citing *In re Love*, 957 F.2d 1350, 1357 ( 7th Cir. 1992)).[4] In a prior unpublished decision, I held that while the *Lilley* factors are helpful when considering whether a plan has been proposed in good faith, the analyses under § 1307(c) and under § 1325(a)(3) are not identical. *See In re Eichhorn*, No. 1-05-bk-03045 (Bankr. M.D. Pa. Sept. 18, 2006). Other courts rendering decisions in cases filed prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"), also developed distinct sets of factors for testing good faith under each section. *See, e.g., In re Love*, 957 F.2d at 1360. ("[T]he good faith inquiry under Section 1307(c) is a broad inquiry focusing on the fairness involved in the initiation of Chapter 13 bankruptcy proceedings, while the good faith inquiry under Section 1325[a] is a more narrow inquiry focusing on the good faith with regard to the Chapter 13 plan."). *See also In re Goddard*, 212 B.R. 233, 238, n. 4 (D. N.J. 1997); *In re Butt*, 1999 WL 1038241, *5 (Bankr. S.D. Ohio 1999). Therefore, before the enactment of BAPCPA, a set of factors somewhat different from those that guided the Third Circuit in *Lilley* was used in this circuit when analyzing good faith in the context of plan confirmation in a chapter 13 case. Generally, these factors included: whether the debtor stated his debts and expenses accurately; whether he had made any fraudulent misrepresentations to the bankruptcy court; or whether he unfairly manipulated the Bankruptcy Code. *Educational Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987) (cited in *In re Norwood,* 178 B.R. 683, 688 (Bankr. E.D. Pa. 1995)); *In re Goddard*, 212 B.R. at 240. Even more broadly, when a court considered

---

[4]In *Lilley*, the Third Circuit cited with approval the totality of the circumstances approach adopted by the Seventh Circuit in *In re Love*, but rejected one factor cited by the Seventh Circuit – whether the debt would be non-dischargeable in a chapter 7 case. *Id.* at 496 n. 2.

4

whether a chapter 13 plan was proposed in good faith, it focused on whether the plan demonstrated an abuse of the "provisions, purpose, or spirit" of chapter 13. *Matter of Smith*, 848 F.2d 813, 818 (7th Cir. 1988) (quoting *In re Rimgale*, 669 F.2d 426, 431(7th Cir. 1982)). With the passage of BAPCPA, however, the tests applied under § 1307(c) and § 1325(a)(3) have become indistinguishable. A new provision in the statute, §1325(a)(7), requires a court to determine whether a petition has been filed in good faith as part of the confirmation process. Therefore, the *Lilley* factors are applicable when determining whether a debtor's chapter 13 plan should be confirmed as well as when deciding whether a chapter 13 case should be dismissed.

The element of the *Lilley* factors that directs a bankruptcy court to examine a debtor's treatment of creditors both before and after filing as part of the totality of circumstances test is of particular relevance in this case. *In re Lilley*, 91 F.3d at 496. *See also In re Solomon,* 67 F.3d 1128, 1134 (4th Cir. 1995); *In re Tucker,* 989 F.2d 328, 330 (9th Cir. 1993). But although a debtor's pre-petition conduct should be considered when analyzing good faith, a court must be wary of "moralizing" about a debtor's conduct pre-petition. *In re Norwood*, 178 B.R. at 688. In my November 27, 2007 opinion in this case, I held that, as *Lilley* instructs, whether a debt is dischargeable in chapter 7 may not be considered when analyzing whether a chapter 13 case has been filed in good faith. The dischargeability of a debt, however, may be considered when determining whether a plan has been filed in good faith.[5] *See* Robert J. Bein, *Subjectivity, Good*

---

[5]The Discussion set forth in the Opinion issued on November 27, 2007 is incorporated herein by reference. It is important to note that CitiFinancial did not allege that its debt would be non-dischargeable in a chapter 7 case. The loss suffered by CitiFinancial as a result of Mr. Price's motor vehicle accident was purely a financial injury, and thus not excepted from discharge by 11 U.S.C. 523(a)(9), which provides that a debt is non-dischargeable if it is incurred as a result of "death or personal injury caused by the debtor's operation of a motor vehicle . . . [while] intoxicated from using alcohol, a drug, or another substance." The evidence also was insufficient to establish that the debt was the result of a willful and malicious injury under § 523(a)(6). "An injury is willful and malicious . . . only if the actor purposefully inflicted the

5

*Faith and the Expanded Chapter 13 Discharge*, 70 Mo. L. Rev. 655, 681 (2005).

      b.      *Nature of the debt and how it debt arose*

According to Debtors' amended schedules, when they filed their petition they had approximately $64,700.00 in secured debt; $9,370.00 in priority unsecured debt; and $18,000.00 in general unsecured debt. Debtors' secured debt consisted of the balances owed on the Jeep that collateralized CitiFinancial's loan and the balance owed on a purchase money loan for a 2005 Ford Focus. Debtors' priority debt included unpaid federal income taxes and child support obligations owed by Mr. Price. Unsecured claims primarily consisted of credit card debt, unpaid utilities, medical expenses, and fines assessed against Mr. Price as a consequence of his criminal conviction. A significant amount of the claims listed in Debtors' schedules arose from the accident that involved CitiFinancial's collateral. Included in these claims are the balance owed to CitiFinancial of $41,600.00 and $6,400.00 in unsecured claims, including fines, damage to a telephone pole and medical expenses. But although the debts related to Mr. Price's accident were a significant part of Debtors' financial obligations, most of their debt, including the underlying loan agreement with CitiFinancial, did not arise through any wrongful conduct by Debtors. The majority of the claims listed in Debtors' schedules, including the CitiFinancial loan, arose

---

injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305 (3d Cir. 1994). Even a deliberate action that has a high probability of producing harm is not considered willful and malicious. *Id*. at 307. "Willfulness requires more than a highly likely but unintended result of the debtor's action." *In re Brown*, 201 B.R. 411, 415 (Bankr. W.D. Pa. 1996), *citing Conte,* 33 F.3d at 307. "[F]or the injury to have been 'willed' by the debtor, it must at least have been substantially certain to result from the debtor's act." *Conte*, 33 F.3d at 307. Mr. Price's act of driving an uninsured vehicle was illegal and reckless, but it was not substantially certain to produce injury. It would have been difficult for CitiFinancial to sustain its burden absent a showing that Mr. Price intentionally wrecked the vehicle knowing that it was uninsured, which CitiFinancial did not do. *See In re Su*, 290 F.3d 1140, 1146 n. 6 (9th Cir. 2002).

through consumer borrowing and purchase of services that routinely constitute the debts in chapter 13 cases.

        c.       *Timing of the petition and Debtors' motive in filing*

CitiFinancial relies most heavily on this factor in its argument that the petition was filed in bad faith. Mr. Price cancelled the insurance on the Jeep approximately two weeks before it was demolished in an accident.[6] After the accident, Mr. Price informed CitiFinancial's agent that he was planning to seek legal advice on how to avoid paying the balance due on the vehicle. Three months later Debtors filed their chapter 13 petition. CitiFinancial asserts that Debtors' motive in filing their petition was to avoid paying the balance owed on the vehicle. Debtors' testimony at the hearing, however, revealed that their motivation for seeking bankruptcy relief was not so narrow. During the relevant period Debtors were working sporadically, they were behind on payments on their other vehicle, they were experiencing marital problems that led Mrs. Price to consult with a divorce attorney, and they were delinquent on debts other than their motor vehicles loans.

        d.       *How the Debtors' actions affected creditors and Debtors' treatment of creditors before and after filing*

Mr. Price failed to notify CitiFinancial that the vehicle was uninsured after he terminated coverage. Further, he drove the vehicle although he knew that it was uninsured and that it soon would be repossessed. In January 2006, three months after the loan was extended, Mr. Price did contact CitiFinancial to inform them that he was having difficulty meeting his obligations and

---

[6]CitiFinancial's representative testified that although CitiFinancial should have received notice that Mr. Price had cancelled his insurance on the vehicle because it was lien holder on the vehicle title, records of the company do not reflect that it received notice of the cancellation. Had Safe Auto, Debtors' insurance company, provided timely notice to CitiFinancial that the policy had been cancelled, CitiFinancial would have had an opportunity to force place coverage to protect its interest.

7

that he wanted to amend the agreement to lower his payments. Nevertheless, he did not take adequate steps to protect CitiFinancial's collateral. These actions, however, do not indicate that Mr. Price intended to harm CitiFinancial or to prevent it from exercising its rights in the collateral. Rather, they suggest that he was an inexperienced borrower, mired in debt and uncertain as to how to extricate himself from this predicament. After the accident, Debtors acknowledged their financial difficulties and went to credit counseling to determine whether they could enter into a repayment plan. However, Debtors testified that they were advised that their income was inadequate to fund an out-of-court arrangement and that bankruptcy was their only recourse.

  e.  *Whether Debtors were forthcoming with the bankruptcy court and with creditors*

As discussed above, Debtors' schedules failed to fully disclose the financial consequences of Mr. Price's criminal conviction for driving under the influence. Mr. Price's conviction, including the imposition of fines and restitution, should have been disclosed in paragraph 4 of the Statement of Financial Affairs or, at a minimum, should have been explained more fully in Schedule "F" on the entry for fines and costs owed to Dauphin County. Debtors also were directed by the Court to file an amended Schedule "F" because it was not possible to ascertain the dates when obligations were incurred from the originally filed Schedule.

The Court believes that Mr. Price was not always completely forthright with the Court. Specifically, the Court finds unconvincing Mr. Price's recitation of the numerous times he informed CitiFinancial's agents that he was willing to surrender the vehicle before the April 19 accident. Mrs. Price's testimony, however, was more candid and painted a more complete picture of the Debtors' financial situation during the months before they filed their petition.[7] In

---

[7]Mrs. Price was sequestered during Mr. Price's testimony.

8

Case 1:06-bk-01457-MDF  Doc 76  Filed 03/06/08  Entered 03/06/08 15:00:43  Desc
Main Document  Page 8 of 11

early 2006 Debtors were strapped, unemployed and considering divorce. Mrs. Price's testimony supported that of her husband when he stated that he cancelled insurance on the Jeep, not with any intention of harming CitiFinancial, but simply because Debtors could not afford to maintain the coverage.[8] Other than Mr. Price's less than credible declaration that he repeatedly pleaded with CitiFinancial to pick up the vehicle, the Court finds that Debtors have been forthright with the Court. They have fully disclosed their assets and liabilities and have proceeded diligently in the prosecution of their bankruptcy case. They have attended all required hearings and the meeting of creditors, and they have made the required payments to the chapter 13 trustee. Mrs. Price has agreed to a voluntary wage deduction order so that payments to the trustee may be made directly by her employer.

  f.  *Whether Debtors unfairly manipulated the Bankruptcy Code or abused the spirit of Chapter 13*

"[T]he basic purpose and spirit of Chapter 13 is rehabilitation and repayment of debt by periodic payments made to a trustee under bankruptcy court protection, with the aim of providing honest, unfortunate and genuinely financially distressed debtors an opportunity to obtain a fresh start." *In re McGovern,* 297 B.R. 650, 658 (S.D. Fla. 2003). Thus, an abuse of chapter 13 may be indicated where debtors have failed to put forth any effort to pay creditors and used bankruptcy to hinder collection by a single creditor. *In re Mattson,* 241 B.R. 629, 634 (Bankr. D. Minn. 1999). Abuse also may be indicated where a chapter 13 petition has been filed "in close proximity to entry of judgment or collection efforts against debtor suggestive of intent to avoid rather than repay debt." *In re McGovern,* 297 B.R. at 659, n. 6. "The . . . pertinent inquiry . . . is

---

[8]Obviously, having made the decision to cancel the insurance, Mr. Price should not have driven the uninsured vehicle. His actions led to the accident that further exacerbated the couple's troubled financial situation and destroyed CitiFinancial's collateral.

9

whether the debtor came to bankruptcy court seeking a fresh start under chapter 13 protection with an intent that is consistent with the spirit and purpose of that law – rehabilitation through debt repayment – or with an intent contrary to its purpose – debt avoidance through manipulation of the Code." *McGovern,* 297 B.R. at 660. "[T]he good faith inquiry essentially asks the court to pass judgment on whether the filing is fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *In re Jensen*, 369 B.R. 210, 233 (Bankr. E.D. PA. 2007) (citations omitted).

One of Debtors' primary motivations in filing chapter 13 was to avoid having to pay in full the balance owed on the Jeep. CitiFinancial obviously is troubled by Debtors' motive and suggests that their actions constitute bad faith. But if a debtor's desire to avoid the payment of a debt determined whether a petition or plan was filed in bad faith, no debtor would be eligible for relief. CitiFinancial has not argued, nor has it presented evidence, that Debtors are able to repay the debt; it simply argues that Debtors' failure to exercise prudent judgment pre-petition and their failure to fully disclose the consequences of their mistakes in their schedules and statements have barred them from obtaining chapter 13 relief. In this case, I do not find that Debtors' actions constitute bad faith.

When Debtors filed their chapter 13 plan, I had not yet ruled on whether a vehicle subject to a purchase money security interest securing a debt on a motor vehicle that was incurred within 910 days prior to the filing could be surrendered in full satisfaction of the debt. If I had ruled in CitiFinancial's favor on this issue, at best CitiFinancial would have had an unsecured claim for the balance owed after subtracting the salvage value of the collateral. Whether or not CitiFinancial shares in distributions made through the chapter 13 plan, Debtors will be required to devote all of their disposable income during the applicable commitment period to fund the

10

Case 1:06-bk-01457-MDF    Doc 76    Filed 03/06/08    Entered 03/06/08 15:00:43    Desc
Main Document      Page 10 of 11

plan unless they opt to pay all unsecured claims in full. Debtors can do no more. There is no way to undo the injury that arose because of Mr. Price's decision to cancel the insurance on the vehicle. This error in judgment, however, does not require me to conclude that the plan was filed in bad faith.

**Conclusion**

CitiFinancial's frustrations are understandable because, more than any other creditor, it will suffer the consequences of Debtors' poor judgment. Although I do not condone or excuse Debtors' actions pre-petition, I conclude that Debtors have carried their burden to demonstrate that their chapter 13 plan was proposed in good faith. Accordingly, CitiFinancial's objection to Debtors' plan will be overrruled. An appropriate order follows.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: March 6, 2008

*This document is electronically signed and filed on the same date.*